**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| CRALITER MOORE, | No. CV 04-07551 CW |
| Plaintiff, | DECISION AND ORDER |
| v. | |
| JO ANNE B. BARNHART, Commissioner, Social Security Administration, | |
| Defendant. | |

The parties have consented, under 28 U.S.C. § 636(c), to the jurisdiction of the undersigned Magistrate Judge. Plaintiff seeks review of the Commissioner's denial of disability benefits. As discussed below, the court finds that the Commissioner's decision should be reversed and this matter remanded for further proceedings.

**I. BACKGROUND**

Plaintiff Craliter Moore was born on August 5, 1968, and was 34 years old at the time of her administrative hearing. [Administrative Record, "AR," 44, 182.] She has a tenth grade education and no past relevant work experience. [AR 13.] Plaintiff alleges disability on

the basis of a vision impairment, depression, and a right knee problem. [Id.]

## II. PROCEEDINGS IN THIS COURT

Plaintiff's complaint was lodged on September 10, 2004, and filed on September 14, 2004. On March 30, 2005, defendant filed plaintiff's Administrative Record ("AR"). On July 11, 2005, the parties filed their Joint Stipulation ("JS") identifying matters not in dispute, issues in dispute, the positions of the parties, and the relief sought by each party. This matter has been taken under submission without oral argument.

## III. PRIOR ADMINISTRATIVE PROCEEDINGS

Plaintiff protectively filed an application for supplemental security income ("SSI") on July 5, 2001, alleging disability since February 1, 2001. [AR 43.] An administrative hearing was held on July 29, 2003, before Administrative Law Judge ("ALJ") John Kent. [Transcript, AR 182.] Plaintiff appeared with a non-attorney representative, and testimony was taken from plaintiff. [Id.] The ALJ denied benefits on December 9, 2003. [Decision, AR 17.] When the Appeals Council denied review on July 15, 2004, the ALJ's decision became the Commissioner's final decision. [AR 4.]

## IV. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Commissioner's (or ALJ's) findings and decision should be upheld if they are free of legal error and supported by substantial evidence. However, if the court determines that a finding is based on legal error or is not supported by substantial evidence in the record, the court may reject the finding and set aside the decision to deny benefits. See Aukland

v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Tonapetyan v. Halter, 242 F.3d 1144, 1147 (9th Cir. 2001); Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995)(per curiam).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720. It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. To determine whether substantial evidence supports a finding, a court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Id. "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Reddick, 157 F.3d at 720-721; see also Osenbrock, 240 F.3d at 1162.

## V. DISCUSSION

### A. THE FIVE-STEP EVALUATION

To be eligible for disability benefits a claimant must demonstrate a medically determinable impairment which prevents the claimant from engaging in substantial gainful activity and which is expected to result in death or to last for a continuous period of at least twelve months. Tackett, 180 F.3d at 1098; Reddick, 157 F.3d at 721; 42 U.S.C. § 423(d)(1)(A).

Disability claims are evaluated using a five-step test:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not

```
    disabled is appropriate.
         Step three: Does the claimant's impairment or
    combination of impairments meet or equal an impairment
    listed in 20 C.F.R., Part 404, Subpart P, Appendix 1?  If
    so, the claimant is automatically determined disabled.  If
    not, proceed to step four.
         Step four: Is the claimant capable of performing his
    past work?  If so, the claimant is not disabled.  If not,
    proceed to step five.
         Step five: Does the claimant have the residual
    functional capacity to perform any other work?  If so, the
    claimant is not disabled.  If not, the claimant is disabled.
```

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996); see also Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987); Tackett, 180 F.3d at 1098-99; 20 C.F.R. § 404.1520, § 416.920. If a claimant is found "disabled" or "not disabled" at any step, there is no need to complete further steps. Tackett, 180 F.3d 1098; 20 C.F.R. § 404.1520.

Claimants have the burden of proof at steps one through four, subject to the presumption that Social Security hearings are non-adversarial, and to the Commissioner's affirmative duty to assist claimants in fully developing the record even if they are represented by counsel. Tackett, 180 F.3d at 1098 and n.3; Smolen, 80 F.3d at 1288. If this burden is met, a prima facie case of disability is made, and the burden shifts to the Commissioner (at step five) to prove that, considering residual functional capacity ("RFC")[1], age, education, and work experience, a claimant can perform other work

---

[1] Residual functional capacity measures what a claimant can still do despite existing "exertional" (strength-related) and "nonexertional" limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.s. 5-6 (9th Cir. 1989). Nonexertional limitations limit ability to work without directly limiting strength, and include mental, sensory, postural, manipulative, and environmental limitations. Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993); Cooper, 800 F.2d at 1155 n.7; 20 C.F.R. § 404.1569a(c). Pain may be either an exertional or a nonexertional limitation. Penny, 2 F.3d at 959; Perminter v. Heckler, 765 F.2d 870, 872 (9th Cir. 1985); 20 C.F.R. § 404.1569a(c).

which is available in significant numbers.  Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. § 404.1520, § 416.920.

**B.   THE ALJ'S EVALUATION IN PLAINTIFF'S CASE**

Here, the ALJ found that plaintiff had never engaged in substantial gainful activity (step one), that plaintiff had "severe" impairments, namely obesity and right-sided blindness (step two), and that plaintiff did not have an impairment or combination of impairments that met or equaled a "listing" (step three).  [AR 13.] Plaintiff was found to have an RFC enabling her to perform a wide range of light work. [AR 14.]  She could not perform her past relevant work because she had none (step four). [Id.]  At step five, it was found that plaintiff's non-exertional impairments only minimally compromised her ability to work and, thus, Rule 202.17 of the Medical-Vocational Guidelines ("Grids") was used to make a finding of "not disabled." [AR 16.]  Accordingly, the ALJ denied benefits. [Id.]

**C.   ISSUES IN DISPUTE**

The parties' Joint Stipulation identifies three disputed issues:

1.   Whether the ALJ properly evaluated the severity of plaintiff's visual impairment;

2.   Whether the ALJ properly evaluated the severity of plaintiff's mental impairment; and

3.   Whether the ALJ properly evaluated plaintiff's credibility.

[JS 4.]

**D.   ISSUE ONE: PLAINTIFF'S VISUAL IMPAIRMENT**

The medical evidence indicates that plaintiff is blind in her right eye and has decreased vision in her left eye. [AR 105, 115, 119, 131, 164-66, 180.]  Under the federal regulations, a claimant "meets" the requirements of Listing 2.02 (Impairment of visual acuity) if "[r]emaining vision in the better eye after best correction is 20/200

or less." 20 C.F.R. Pt. 404, Subpt. P, App.1, §2.02.  Here, the ALJ found that plaintiff is blind in her right eye. [AR 13.]  Thus, the determinative issue is whether plaintiff's vision in her left eye is 20/200 or less.

Although there is medical evidence that plaintiff's left eye is impaired, the evidence varies with respect to the degree of impairment.  In April 1999, plaintiff's left-eye vision was measured at 20/30. [AR 105.]  In August 2001, it was measured at 20/100 minus 1. [AR 165.]  An undated record shows a measurement of 20/200. [AR 166.]  In October 2001, the left eye was measured at 20/200 with a pinhole correction. [AR 115, 119.]  In November 2001, her best corrected vision in the left eye was measured at 20/400. [AR 131.]  In February 2002, vision in the left eye measured at 20/100. [AR 164.]  In September 2003, it was measured "best corrected" at 20/200. [AR 180.] Based on this evidence, there is no consensus regarding the degree of impairment of plaintiff's left eye.

In January 2002, plaintiff underwent a visual evoked response ("VER") test, but the results were considered "technically unsatisfactory." [AR 133.]  The examiners felt that plaintiff was "extremely uncooperative" in failing to adequately fixate on the visual stimulus, which suggested that she was malingering. [Id.] During the administrative hearing, the ALJ informed plaintiff that he would order a second VER test but that "I still need your full cooperation," otherwise "there's nothing I can do for you." [AR 207.] Plaintiff agreed to give her full effort on a second test. [Id.]  The record does not indicate, however, that a second VER test was ever performed.  In his eventual decision, the ALJ concluded that, "Despite the claimant's attempt to portray otherwise, there is nothing wrong

6

1  with her left eye." [AR 14.]
2       The ALJ's conclusion that plaintiff's left eye is normal is not
3  supported by substantial evidence, and further development of the
4  record is required.  All of the existing medical evidence indicates
5  that plaintiff suffers from at least some impairment in her left eye.
6  The only issue is the degree of impairment.  This issue was to be
7  resolved, at least in part, by a second VER test, but the record does
8  not indicate that it ever took place.  Upon remand, the ALJ will order
9  the administration of a second VER test or obtain the results if it
10 has already been administered.
11      Another problem regarding the development of the record is that
12 the remainder of plaintiff's treatment records from Dr. Cheryl Powell,
13 an ophthalmologist, could not be obtained because Dr. Powell
14 apparently asked for $500 to release the records. [AR 185.]  The
15 records are especially significant because plaintiff was treated by
16 Dr. Powell for at least two years, from July 2001 to the time of the
17 administrative hearing in July 2003. [AR 167, 186.]  The regulations
18 provide that an ALJ may issue a subpoena for the issuance of medical
19 records on his own initiative or upon the request of a party if the
20 records are reasonably necessary for the full presentation of a case.
21 20 C.F.R. § 416.1450(d).  Given that plaintiff was not represented by
22 counsel at the administrative hearing, it is unlikely that she would
23 have requested a subpoena for Dr. Powell's records.  Upon remand,
24 appropriate steps will be taken to obtain the records.
25      **E.   ISSUE TWO: PLAINTIFF'S MENTAL IMPAIRMENT**
26      From October 2002 to June 2003, plaintiff received psychiatric
27 treatment from Dr. Buford Gibson. [AR 172.]  Plaintiff complained of
28 depression due to the deterioration of her eye sight, lack of

7

motivation, sleeplessness, decreased concentration and weight gain. [AR 168.] Plaintiff told Dr. Gibson that she no longer took care of her grooming or attended to household chores. [AR 170.] Dr. Gibson reported that plaintiff was taking Prozac daily. [Id.] Dr. Gibson assessed plaintiff with a Global Assessment of Functioning ("GAF") score[2] of 45 and gave her a prognosis of "Chronic; disabled. Unable to work." [Id.] According to Dr. Gibson, plaintiff was severely impaired in social, familial and occupational functioning with medical issues. [Id.] He opined that plaintiff requires daily medication, and there would be no significant change in her condition for the following 12 months. [Id.]

The reliability of Dr. Gibson's report is compromised, however, by the fact that plaintiff was not taking the Prozac that was prescribed for her. Plaintiff testified that she could not get Dr. Gibson's prescriptions filled because the medications were not covered by MediCal, and that she had never taken any of the medications he prescribed. [AR 198-99.] It does not appear that plaintiff informed Dr. Gibson that she was not taking the Prozac and Zoloft that he prescribed [AR 174], because his psychiatric report states that plaintiff takes Prozac daily and requires daily medication. [AR 170.] Based on the plaintiff's "with[holding] of vital information from her treating psychiatrist" [AR 15], the ALJ concluded that plaintiff's "mental impairment is 'non-severe' [at Step Two of the sequential

---

[2] A GAF score represents a clinical evaluation of an individual's overall level of functioning. A GAF score of 41 to 50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep job.) DSM-IV, American Psychiatric Association, (Washington, 1994).

Case 2:04-cv-07551-CW   Document 20   Filed 02/10/06   Page 9 of 13   Page ID #:79

evaluation] based on her failure to follow prescribed treatment that could reasonably be expected to restore her ability to work." [AR 13.]

In order to receive disability benefits, a claimant must follow the treatment prescribed by her physician if this treatment can restore her ability to work. See SSR 82-59 at 1; 20 C.F.R. §416.930(b). On the other hand, a claimant may have a "good reason" for non-compliance with a prescribed treatment plan, including an inability to afford treatment. See Regenniter v. Commissioner of the Social Security Administration, 166 F.3d 1294, 1296 (9th Cir. 1999); Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); Gamble v. Chater, 68 F.3d 319, 321 (9th Cir. 1995). Here, plaintiff testified that she did not fill Dr. Gibson's prescriptions because her insurance did not cover them and she could not afford the medications. The ALJ implicitly rejected plaintiff's excuse, finding that plaintiff could have "avail[ed] herself of free services at one of the publicly-funded mental health facilities in the area." [AR 13.]

The ALJ's speculative conclusion was legally deficient because it failed to include the findings necessary to determine whether plaintiff had a "good reason" for failing to take the prescribed medications. 20 C.F.R. § 416.930(c). Specifically, the ALJ did not give plaintiff an opportunity to explain the particular reasons for her failure to take medications, including whether she tried to obtain the medications through other avenues. See SSR 82-59 at 2 ("[d]etailed questioning may be needed to identify and clarify the essential factors of refusal" and the "record must reflect as clearly and accurately as possible the claimant's ... reason(s) for failing to follow the prescribed treatment."); see also Byrnes v. Shalala, 60 F.3d 639, 641 (9th Cir. 1995)(citing Dodrill v. Shalala, 12 F.3d 915,

9

919 (9th Cir. 1993))(ALJ was required to examine personal factors that bear on plaintiff's ability to remedy her impairment); Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004)(ALJ must allow plaintiff to explain why she failed to follow the prescribed course of treatment); Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 1988)(ALJ must make explicit findings before denying benefits based on claimant's non-compliance).  Because the ALJ failed to analyze the specific reasons why plaintiff failed to take her prescribed medications, other than offer an oblique solution of "free public clinics," his decision cannot stand.

    The ALJ's conclusion was flawed in another respect.  Even assuming that plaintiff refused to comply with her prescribed treatment, the ALJ lacked a sufficient basis to decide treatment compliance would have "restored plaintiff's ability to work."  See 20 C.F.R. §416.930(a); Burnside v. Apfel, 223 F.3d 840, 844 (8th Cir. 2000)(inquiry whether prescribed treatment would restore ability to work is required before denying benefits based on non-compliance); Dawkins, 848 F.2d at 1213; Tsarelka v. Secretary of Health and Human Services, 842 F.2d 529, 534 (1st Cir. 1988).  Here, Dr. Gibson's treatment records are ambiguous whether plaintiff's compliance with her medication regime would "restore her ability to work."  It is notable that he opined plaintiff would be "disabled [and] unable to work" even if she was taking her medication daily. [AR 170.]  Of course, Dr. Gibson was unaware of the fact plaintiff was not taking her medication daily, but there is nonetheless the open question of whether Dr. Gibson felt that Prozac would restore plaintiff's ability to work.  Accordingly, the ALJ's speculative conclusion in the affirmative cannot stand, and the matter must be remanded for a

reevaluation of the reasons for and the effect of plaintiff's failure to comply with her treatment plan.

### F.   ISSUE THREE: PLAINTIFF'S CREDIBILITY

During the administrative hearing, plaintiff testified about the significant limitations she suffered due to her obesity, visual and mental impairments, and right ankle pain.  She stated that her weight made it difficult to move [AR 190], that she couldn't see in her right eye and had to wear dark glasses [AR 194], that her left eye had blurry vision [AR 195], that she twisted her right ankle and needed pain medication to sleep [AR 196], and that she has been depressed since the death of her brother in 1992 or 1993. [AR 197.]  Plaintiff also testified that she had not filled Dr. Gibson's prescriptions for psychotropic medications because MediCal did not cover them. [AR 198.]

In his decision, the ALJ stated more than a dozen reasons to reject plaintiff's credibility. [AR 14-15.]  Not all of them are "clear and convincing" under the Ninth's Circuit's standard for the evaluation of a claimant's credibility.[3]  Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001); Tonapetyan, 242 F.3d at 1148; Light v. Social Security Admin., 119 F.3d 789, 792 (9th Cir. 1997).  However, enough of them are.  For example, the ALJ noted inconsistencies in plaintiff's statements regarding her daily activities.  While plaintiff told Dr. Buford that she does "little or nothing during the day" [AR 170], she later testified that she prepares simple meals [AR 202], cares for her newborn [Id], does

---

[3]  For example, the ALJ noted that each of plaintiff's four children have different fathers and that her latest boyfriend is in prison. [AR 15.]  It is unclear how this has any bearing on plaintiff's credibility regarding her physical and mental impairments.

11

1  simple house cleaning [Id], shops [AR 203] and goes to the laundromat.
2  [Id.] Although a claimant need not be a "basket case" in order to be
3  eligible for benefits, here, the inconsistencies in plaintiff's
4  statements regarding her activities damages her credibility. See
5  Moncada v. Chater, 60 F.3d 521, 524 (9th Cir. 1995); Tonapetyan, 242
6  F.3d at 1148. Another inconsistency arises between plaintiff's report
7  to Dr. Gibson that she scrupulously avoids contact with other people
8  [AR 170] and her earlier statement that one of her hobbies is talking
9  on the phone "all the time." [AR 67.] The ALJ also cited plaintiff's
10 lack of cooperation during her eye exam to discredit her allegations.
11 See Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002)(claimant's
12 failure to give maximum or consistent effort during physical
13 evaluation was a "compelling" reason to reject her credibility).
14 Collectively, the ALJ's reasons were sufficiently "clear and
15 convincing" to discount plaintiff's credibility regarding her
16 subjective complaints. Accordingly, Issue Three does not warrant
17 reversal.

### G. REMAND FOR FURTHER PROCEEDINGS

The decision whether to remand for further proceedings is within the discretion of the district court. Harman v. Apfel, 211 F.3d 1172, 1175-1178 (9th Cir. 2000). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Harman, 211 F.3d at 1179 (decision whether to remand for further proceedings turns upon their likely utility). However, where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if

all the evidence were properly evaluated, remand is appropriate.  <u>Id</u>. Here, as set out above with respect to Issues One and Two, outstanding issues remain before a finding of disability can be made. Accordingly, remand is appropriate.

### VI.  <u>ORDERS</u>

Accordingly, **IT IS ORDERED** that:

1. The decision of the Commissioner is **REVERSED.**

2. This action is **REMANDED** to defendant, pursuant to Sentence Four of 42 U.S.C. § 405(g), for further proceedings as discussed above.

3. The Clerk of the Court shall serve this Decision and Order and the Judgment herein on all parties or counsel.

DATED: February 10, 2006

```
              _____/s/_____
                    CARLA M. WOEHRLE
                United States Magistrate Judge
```